1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NKD DIVERSIFIED ENTERPRISES, INC., et al., | Case No. 1:14-cv-00183-AWI-SAB |
| Plaintiffs, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING PLAINTIFFS' MOTION TO REMAND AND DENYING REQUEST FOR ATTORNEY FEES |
| v. | |
| FIRST MERCURY INSURANCE COMPANY, et al., | (ECF Nos. 5, 6, 7, 9) |
| Defendants. | OBJECTIONS DUE WITHIN FOURTEEN DAYS |

Following Defendants' removal of this action from state court, Plaintiffs seek to remand this action based upon the untimeliness of the removal. For the reasons addressed below, the Court recommends granting Plaintiffs' motion to remand and denying the request for attorney fees.

## I.

## PROCEDURAL HISTORY

On November 2, 2012, Plaintiff NKD Diversified Enterprises, Inc. and A.D.S. Picchetti Inc. filed suit in Stanislaus County Superior Court against Defendants First Mercury Insurance Company, Nationwide Insurance Company, and AMCO Insurance Company alleging breach of contract and breach of the implied covenant of good faith and fair dealing; and against Defendant Giddings, Corby, Hynes, Inc. ("Giddings") alleging negligent misrepresentation, negligence, and breach of contract. (Compl., attached to Notice of Removal as Exhibit A, ECF No. 1-1.) The

1    action stems from two incidents in February and March of 2011 in which Plaintiffs' building

2    sustained storm damage.   (Id. at 4.)   Plaintiffs allege they submitted two separate claims to

3    Defendants which were processed as a single incident resulting in the coverage being insufficient

4    to cover the losses to the building.  (Decl. of J. Edward Kerley ¶ 3, ECF No. 7.)

5         On February 11, 2013, Defendant First Mercury Insurance Company filed a cross-

6    complaint against Plaintiff NKD.   (Cross Compl., attached as Exhibit B to Notice of Removal,

7    ECF No. 1-1.)   On January 23, 2014, the Superior Court granted Plaintiffs' request to dismiss

8    Defendant Giddings from this action.   (Order on Request for Dismissal, attached to Notice of

9    Removal as Exhibit C, ECF No. 1-1.)

10        On February 10, 2014, Defendants removed this action the Eastern District of California.

11   (ECF No. 1.)   On March 10, 2014, Plaintiffs filed a motion to remand.   (ECF No. 5, 6, 7.)

12   Defendants filed an opposition to the motion to remand on April 16, 2014.  (ECF No. 9.)  Plaintiffs

13   filed an untimely reply which was stricken from the record.  (ECF No. 10, 11.)  On April 25, 2014,

14   the Court issued an order striking Plaintiff's untimely reply and vacating the April 24, 2014

15   hearing.  (ECF No. 11.)  On April 28, 2014, Plaintiff filed an application to file a late reply.[1]  (ECF

16   No. 12.)

## II.

## LEGAL STANDARD

19        The federal statute governing the removal of proceeding from state to federal court begins

20   at 28 U.S.C. § 1441, which states: "[a]ny civil action brought in a State Court of which the district

21   courts of the United States have original jurisdiction may be removed by the defendant . . . to the

22   district court of the United States for the district . . . where such action is pending."  28 U.S.C. §

23   1441(a).  The time period to file a notice of removal is governed by 28 U.S.C. § 1446(b).

24        Under Section 1446(b), a defendant may remove an action more than thirty days after

25   commencement of the action in two circumstances:   1) after the defendant receives the initial

26   pleading setting forth a federal claim; or  2) during the first thirty days after receiving a paper

27

28   ---
     [1]  The Court has issued an order addressing Plaintiff's application to file a late reply concurrently with this order.

1  "from which it may first be ascertained that the case is one which is or has become removable."

2  28 U.S.C. § 1446(b)(1) and (3); <u>Harris v. Bankers Life and Cas. Co.</u>, 425 F.3d 689, 692 (9th Cir.

3  2005).  However, a case based upon diversity jurisdiction may not be removed "more than 1 year

4  after commencement of the action, unless the district court finds that the plaintiff has acted in bad

5  faith in order to prevent a defendant from removing the action."  28. U.S.C. § 1446(c)(1).

6      In removal cases, the defendant bears the burden of establishing federal jurisdiction.

7  <u>Abrego Abrego v. The Dow Chemical Co.</u>, 443 F.3d 676, 682 (9th Cir. 2006).  "Removal statutes

8  are strictly construed against removal."  <u>Luther v. Countywide Home Loan Servicing LP</u>, 533 F.3d

9  1031, 1034 (9th Cir. 2008).  "Federal jurisdiction must be rejected if there is any doubt as to the

10  right of removal in the first instance."  <u>Gaus v. Miles, Inc.</u>, 980 F.2d 564, 566 (9th Cir. 1992).

11  **III.**

12  **DISCUSSION**

13      The parties agree that the removal in this instance is presumptively untimely as the action

14  was removed more than one year after it commenced.  (Notice of Removal 2, ECF No. 1.)

15  Defendants have removed this action asserting that Plaintiffs acted in bad faith by naming

16  Giddings as a defendant to defeat diversity jurisdiction and waiting fourteen months to dismiss him

17  as a defendant without any genuine attempt to pursue a judgment against Giddings.[2]  (<u>Id.</u> at 3.)

18  Plaintiffs move to remand this action to state court arguing that they acted in good faith by suing,

19  and in moving to dismiss, Defendant Giddings.  (Mem. P. & A. in Support of Mot. to Remand 3,

20  ECF No. 6.)

21      **A.**    **Fraudulent Joinder**

22      Initially, the Court shall address Plaintiffs' contention that Defendants are merely arguing

23  fraudulent joinder and could have removed this action within the one year required by the statute

24  on that ground.

25      An exception to the requirement of complete diversity exists where a defendant has been

26  [2] The date an action commences is governed by the law of the state in which it originated.  <u>Gray v. Moore Business</u>

27  <u>Forms</u>, 711 F.Supp. 543, 545 n.1 (N.D. Cal. 1989).  Pursuant to California law, a case commences upon the filing of
the complaint. Cal. Civ. Proc. Code § 350.  The Court notes that this action was filed on November 2, 2012.

28  Defendant Giddings was dismissed from the action on January 23, 2013.  Defendant Giddings was dismissed fourteen
months and three weeks after the action commenced.

1  fraudulently joined to defeat diversity. Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th

2  Cir. 2001). "If the plaintiff fails to state a cause of action against a resident defendant, and the

3  failure is obvious according to the settled rules of the state, the joinder of the resident defendant is

4  deemed fraudulent." Hamilton Materials, Inc. v. Dow Chemical Corp., 494 F.3d 1203, 1206 (9th

5  Cir. 2007) (quoting McCabe v. General Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987)).

6  Where joinder is deemed fraudulent, the defendant's presence is ignored for the purposes of

7  determining diversity. Morris, 236 F.3d at 1067.

8      Although the doctrine of fraudulent joinder and the bad faith exception are both to thwart

9  gamesmanship by plaintiffs in diversity cases, the bad faith and fraudulent joinder standards are

10  not the same. Ehrenreich v. Black, __ F.Supp.2d __, 2014 WL 231946, at *3 (E.D.N.Y Jan. 21,

11  2014). The bad faith exception of section 1446 governs the timing of removal. Id. Fraudulent

12  joinder is a court created doctrine that pertains to the court's jurisdiction over the action. Id.

13      In addressing the issue of fraudulent joinder, the Ninth Circuit looks to whether the facts in

14  the complaint would preclude the plaintiff from recovering against the non-diverse defendant. See

15  Morris, 236 F.3d. at 1067-68 ("abundantly obvious that [plaintiff] could not possibly prevail on her

16  negligent representation claim"). In this circuit, district courts only apply the fraudulent-joinder

17  rule in cases where it is "indisputably clear" that the plaintiff will be unable to state a cause of

18  action against the non-diverse defendant in state court. See Tahoe Keys Marina & Yacht, LLC v.

19  Merkelback, No. 2:12-cv-02582-GEB-AC, 2013 WL 221510, at *1 (E.D. Cal. Jan. 18, 2013).

20      Here, Plaintiffs brought claims of negligent misrepresentation, negligence, and breach of

21  contract against Defendant Giddings. (ECF No. 1-1 at 9-12.) Plaintiffs contend that the agent of

22  Defendant Giddings represented that he had the experience and training to advise Plaintiffs

23  regarding insurance coverage and after inspecting the premises advised Plaintiff of the amount of

24  coverage necessary to protect their interests. (Id. at 10.) Defendant Giddings then sold Plaintiffs

25  an insurance policy. (Id.) Plaintiffs alleged that Defendant Giddings failed to accurately appraise

26  the value of the building and determine the adequate amount of insurance coverage  Further,

27  Plaintiffs contend that Defendant Giddings advised them to allow the damage from the second

28  storm to be handled as part of the first storm in order to avoid having to pay a second deductible

1   without informing them that, due to the relatively small policy limits, this would result in the
2   policy limits being insufficient to cover the damage to the building due to the separate incidents.
3   (ECF No. 7 at ¶ 3.)

4          The Court finds that Plaintiffs have articulated a valid theory of liability under California
5   law and the joinder of Defendant Giddings was not fraudulent.  See Wallman v. Suddock, 200
6   Cal.App.4th 1288, 1313 (2011) (under some circumstances an insurance agent's misrepresentation
7   about the scope of insurance coverage can constitute actionable negligence); Williams v. Hilb,
8   Rogal & Hobbs Ins. Services of California, Inc., 177 Cal.App.4th 624, 636 (2009) (insurance agent
9   may be liable for negligence where he holds himself out as having expertise in the insurance
10  sought by the insured); Paper Savers, Inc. v. Nacsa, 51 Cal.App.4th 1090, 1104 (1996) (insurance
11  agent may be liable for negligence where he holds himself out as advisor and misinterprets the
12  language of the policy).  Defendants have not brought this motion on the ground of fraudulent
13  joinder and, in this instance, would not have prevailed had such a motion been brought within one
14  year after commencement of the action.

15         **B.      Defendants Have Failed to Meet Their Burden of Establishing Bad Faith
16                 Conduct**

17         The parties do not dispute that there is complete diversity of citizenship, that the amount in
18  controversy is over $75,000.00, or that the removal of this action was more than one year after it
19  commenced.  The sole issue before the Court is whether Plaintiffs acted in bad faith to prevent the
20  removal of this action within the one year allowed by statute.

21         The bad faith exception to the one-year limitation on removal of diversity cases is a fairly
22  recent amendment to Section 1446.  Ehrenreich, 2014 WL 231946, at *3.  The intent of the
23  amendment was to clarify that the one year limitation was procedural and can be excused upon a
24  showing of bad faith.[3]  Id.  The Ninth Circuit has not addressed the standard to be applied to meet
25  the bad faith requirement of the amendment to Section 1446 nor has it recognized any equitable

---

26  [3] Although in their motion to remand Plaintiffs rely on Ehrenreich to argue that Defendants must show by clear and
27  convincing proof that Plaintiffs "engaged in gamesmanship to prevent a defendant's removal from state court[,]" (ECF
    No. 6 at 3), in Ehrenreich the clear and convincing standard was used in the context of the fraudulent joinder analysis.
28  2014 WL 231946, at *3.  This standard was not applied in the bad faith context and Ehrenreich emphasized that "it is
    far from clear that the 'bad faith' and 'fraudulent joinder' standards are one and the same."  Id. at *3.

1   exceptions to section 1446(c)(1).  <u>Markham v. Home Depot USA, Inc.</u>, No. 2:13-cv-08421-GHK

2   (JCGx), 2014 WL 117102, at *1 (C.D. Cal. Jan. 10, 2014).  While it is unclear what standard

3   would be used in this context, the requirement that a party acts in bad faith sets a high threshold.

4   <u>Primus Automotive Financial Services, Inc. v. Batarse</u>, 115 F.3d 644, 649 (9th Cir. 1997).

5   Regardless of the standard applied, the Court finds that Defendants' have failed to carry their

6   burden to demonstrate bad faith conduct by Plaintiffs in this action.

7         Defendants contend that this action only remained in state court as long as it did due to

8   Plaintiffs' gamesmanship.  (Defs.' Opp. to Pls.' Mot. to Remand 2, ECF No. 9.)  Defendants argue

9   that Plaintiffs' complaint failed to state the amount in controversy and named a non-diverse

10  defendant to defeat removal.  (<u>Id.</u>)  Further, Defendants claim that Plaintiffs were aware that

11  Defendants recognized there were two separate incidents seven months prior to the depositions

12  based on Defendants' responses to request for interrogatories; the damages sought are still beyond

13  the policy limits; and Plaintiffs sent Giddings the bare minimum of discovery prior to dismissing

14  him just after the time to remove had run.  (<u>Id.</u>)

15        1.   <u>Timing of Dismissal</u>

16        Defendants argue that the timing of the dismissal, with the lack of any attempt to pursue

17  judgment against Defendant Giddings, demonstrates bad faith on the part of Plaintiffs.  Defendants

18  cite <u>Kite v. Richard Wolf Med. Instruments Corp.</u>, 761 F.Supp. 597 (S.D. Ind. 1989, for the

19  proposition that bad faith is exhibited where a party is deliberately named to defeat diversity with

20  no genuine attempt to pursue judgment.  (ECF No. 9 at 5.)  In <u>Kite</u>, the defendants removed the

21  action to state court, at which time the plaintiff amended the complaint to name a defendant that

22  destroyed diversity.  <u>Kite</u>, 761 F.Supp at 598.  The case was remanded to state court and then, after

23  the year deadline to remove had passed, the plaintiff dismissed the non-diverse defendant.  <u>Id.</u>

24  Defendant then removed the action a second time.  <u>Id.</u>  The court found an exception to the one

25  year deadline existed where a defendant timely removes an action only to have the plaintiff name a

26  diversity destroying defendant and then dismiss that defendant without prejudice more than one

27  year after the action was commenced.  <u>Id.</u> at 601.  Such is not the case here, where Plaintiff

28  originally named a defendant against who they had a valid cause of action at the commencement of

1   the action and dismissed the defendant after agreeing to a waiver of costs almost fifteen months

2   after the action was commenced.

3       This action is also distinguishable from <u>Tedford v. Warner-Lambert Co.</u>, 327 F.3d 423 (5th

4   Cir. 2003), in which the Fifth Circuit found that equitable tolling of the one year period for

5   removal applied and an equitable exception existed.  In <u>Tedford</u>, the plaintiff's case was severed

6   and the defendants notified the plaintiff that they intended to remove the action to federal court

7   because she could not state a cognizable claim against the non-diverse defendants.  327 F.3d at

8   425.  Three hours later, the plaintiff amended her complaint to add her treating physician as a

9   defendant.  <u>Id.</u>  Without taking any discovery, the plaintiff entered non-suit against the defendant

10  that was post-dated prior to the one year anniversary date of the commencement of the action

11  without providing notice to defendants until after the one year anniversary had passed.  <u>Id.</u>  The

12  Fifth Circuit found in these circumstances the plaintiff had attempted to manipulate the statutory

13  rules for removal jurisdiction to prevent defendants from exercising its rights.  <u>Id.</u> at 428-29.

14      None of the circumstances in <u>Tedford</u> are present in the instant action.  Plaintiffs initially

15  brought a valid claim for negligence against Defendant Giddings and conducted discovery.

16  Plaintiffs state that Giddings was not dismissed until after they determined that their theory against

17  Giddings was unnecessary due to the admissions of the remaining Defendants.  For that reason, the

18  parties agreed to a waiver of costs and Defendant Giddings was dismissed with prejudice.  While

19  Defendants argue that they were not notified of the dismissal of Defendant Giddings at the time,

20  there is nothing to indicate that the dismissal was prior to the one year anniversary of the

21  commencement of the action as in <u>Tedford</u>.  The Court finds that the exception recognized in

22  <u>Tedford</u> is not applicable here.

23      Defendants further contend that Plaintiffs named Defendant Giddings for the purpose of

24  defeating diversity jurisdiction.  However, while the timing of the dismissal of Defendant Giddings

25  may appear suspect, that in itself does not support the contention that Giddings was named to

26  defeat diversity jurisdiction.  In this instance, Defendant Giddings was dismissed almost fifteen

27  months after the action was commenced; this is distinguishable from the time frame that other

28  courts have found sufficient to find bad faith.  <u>See</u> <u>Cameron v. Teeberry Logistics, LLC</u>, 920

F.Supp.2d 1309, 1316 (N.D. Ga. 2013) (plaintiff acted in bad faith by failing to provide unambiguous notice that the amount in controversy was over $75,000.00 until a demand letter sent one year and four days after the suit was filed); Brown v. Wal-Mart Stores, Inc., No. 5:13-cv-00081, 2014 WL 60044, *2 (W.D. Va. Jan. 7, 2014) (plaintiff's failure to provide information on the amount of damages until eight days after the one year period had passed fell within the bad-faith exception to the one year removal rule).

### 2. Discovery Propounded in the Action

Defendants argue that Plaintiff conducted the bare minimum of discovery against Defendant Giddings and did not conduct a deposition of any Giddings employee. While courts have found bad faith where a defendant was dismissed without conducting any discovery, Plaintiffs here did actively litigate the claim against Defendant Giddings. See Forth v. Diversey Corp., No. 13-cv-00808-A, 2013 WL 6096528, *2 (W.D.N.Y Nov. 20, 2013) (plaintiff took no discovery before dismissing the non-diverse defendant and their explanations for failure to dismiss him earlier were inconsistent and implausible).

This action was filed on November 2, 2012, and on January 9, 2013, Plaintiff served a request for production of documents on Defendant Giddings. (Decl. of J. Edward Kerley ¶¶ 2, 7, ECF No. 7.) On March 7, 2013, Defendant Giddings produced approximately 1,700 pages of discovery. (Id. at ¶ 7.)

On January 10, 2013, Plaintiff propounded a set of interrogatories to Defendant Giddings, and Defendant Giddings served responses on February 28, 2013. (Id. at ¶ 8.) On April 11, 2013, Plaintiff propounded special interrogatories on Defendant Giddings, and Defendant Giddings responded on May 30, 2013. (Id. at ¶ 9.) Plaintiff's noticed the deposition of Brad Geopert, an employee of Defendant Giddings, on October 18, 2013. (Id. at ¶ 13.)

While Defendants argue that Plaintiffs propounded only basic discovery requests at the outset of the case, the evidence shows that Plaintiffs propounded three sets of discovery from January 2013 through April 2013, which resulted in the production of approximately 1,700 pages of documents and responses to requests for interrogatories. Plaintiffs did notice the deposition of their insurance agent, who was an employee of Defendant Giddings. Although this deposition did

1    not take place, considering the totality of the circumstances, this is insufficient to find bad faith on

2    the part of Plaintiffs.

3              3.    Failure to Allege Amount in Controversy

4              Defendants argue that Plaintiffs attempted to avoid federal jurisdiction by failing to include

5    the amount in controversy in the complaint.  Defendants cite Wilbanks v. North American Coal

6    Corp., 334 F.Supp.2d 921 (S.D. Miss. 2004), to support their argument that Plaintiffs failure to

7    allege the amount in controversy in the complaint should be considered in the bad faith analysis.

8    In Wilbanks, the plaintiff stated that he was seeking $65,000 in the action. 334 F.Supp.2d at 924.

9    After receiving a response to a request for admissions that the defendant believed was other paper

10   from which they ascertained the jurisdictional amount had been satisfied, the action was removed

11   to federal court.  Id. at 925.  The Fifth Circuit considered the "Preferred Approach" where certain

12   acts or omissions are sufficient indications that the plaintiff intends to amend his complaint to seek

13   damages.  Id.  The federal court remanded finding that the conditional reply did not establish that

14   the plaintiff was seeking damages in excess of the jurisdictional amount.  Id. at 927.

15             In this case, although Plaintiffs did not state the amount in controversy in the complaint, the

16   complaint alleges that Plaintiffs submitted claims for loss and damage to the building and contents.

17   (ECF No. 1-1 at ¶ 11.)  Based upon the evidence before the Court, the total claim for the building

18   was approximately $1,566,000.  (ECF No. 7 at 3(e).)  The complaint further alleges that the

19   insurance was insufficient to pay for the replacement of the building and to cover losses of income

20   and additional expenses in the event of the interruption of the rental of the building.  (ECF No. 1-1

21   at ¶ 56.)  Defendants argue that Plaintiffs did not state an amount in controversy despite having

22   made a demand of $700,000 to Defendant AMCO and a demand of $130,000 to First Mercury in

23   the course of their respective claims.  (ECF No. 9 at 6.)  The insurance policy contained a building

24   limit of $614,900 and a limit for code upgrade coverage of $25,000.  (ECF No. 7 at ¶ 3b.)

25             The fact that Plaintiffs alleged that the insurance was insufficient to cover the damages they

26   were seeking, of which Defendants had notice by the prior demand, would put Defendants on

27   notice that the amount in controversy was in excess of $75,000 given the amount of the insurance

28   coverage on the policy.  Further, Defendants offer no argument or evidence that Plaintiffs failed to

1    acknowledge the amount in controversy prior to the one year deadline to remove.  Also, since there

2    was no diversity of citizenship during the twelve months after the commencement of the action,

3    the amount in controversy has little relevancy to the issue addressed here.

4              4.    Timing of Notice of Admission of Separate Incidents

5         Plaintiffs contend that after conducting depositions of Nationwide employees it became

6    obvious that the insurers could not claim that there had been a single loss as several employees

7    admitted they were aware there were two separate losses.  (ECF No. 6 at 5-6; ECF No. 7 at ¶ 16.)

8    Having obtained this information, Plaintiffs' counsel contacted their experts who opined that, in

9    light of the insurers admission that there were two separate losses, there was sufficient coverage

10   under the policies for the loss.  (ECF No. 7 at ¶ 18.)  Counsel concluded that by failing to respond

11   to the proof of loss or deny the claim, Defendant Nationwide would be estopped from claiming

12   there had been a single loss.  (Id. at ¶ 19.)  Counsel determined that given this situation, he could

13   most efficiently and effectively pursue the action by dismissing Defendant Giddings and moving

14   forward against the insurer defendants.  (Id. at ¶ 19.)  Counsel obtained a waiver of costs, and

15   Defendant Giddings was dismissed from the suit.  (Id. at ¶ 20.)

16        Defendants argue that Plaintiff was aware that Defendants recognized that there were two

17   separate incidents based upon interrogatory responses provided May 29, 2013.  (ECF No. 9 at 7-8.)

18   In Special Interrogatory No. 4, Defendant AMCO was asked "Do you contend that the maximum

19   limit of $614,900 for the physical loss to the building for March 20, 2011, claim is reduced by the

20   February 26, 2011, claim for damage?"  (Def. AMCO Insurance Co.'s Responses to Pl. NKD

21   Diversified Enterprises, Inc.'s Special Interrogatories, Set One 10, attached as Exhibit A, ECF No.

22   9-1.)  Defendants' substantive response was "AMCO responds that the per-claim building policy

23   limits for damage caused by the March 2011 loss is $614,900."  (Id.)

24        Special Interrogatory No. 5, asked, "If your answer to interrogatory number four is

25   anything other than "yes," please explain the legal and factual basis for your answer."  (Id.)

26   Defendants' substantive response was "AMCO responds that the late February 2011 storm was a

27   separate occurrence from the series of storms that occurred in March 2011."  (Id.)  Defendants

28   argue that at this time Plaintiffs would have had sufficient knowledge to make the decision to

dismiss Defendant Giddings and the failure to do so until months later shows that his presence in the action was solely to prevent removal.

During the deposition of Marla Sharlow, on December 16, 2013, there was questioning regarding whether the second claim submitted March 20, 2011 was simply a tree removal claim or whether there was additional building damage. (Depo. of Marla Sharlow 3, ECF No. 7-1.)  During the deposition, Ms. Sharlow testified that Mr. Copeland had stated there was no second claim. (Id. at 6.)  Mr. Copeland had lumped the March 20th claim with the February 25th claim. (Id. at 7.)  Mr. De Cesare was critical that Mr. Copeland had lumped the two claims because there were two separate incidents and two claims. (Id. at 7.)  .

The May 29, 2013 interrogatory response that the late February 2011 storm was a separate occurrence from the series of storms that occurred in March 2011 did not provide notice on the issue of whether Defendants considered the damage to the building alleged to be from the two storms to have occurred from a single incident.  It was not until the deposition on December 16, 2013, that there was notice to Plaintiffs that employees of Defendants made a clear admission that there were two separate claims based upon two separate incidents.

　　　5.　　Sufficiency of Policy

Finally, Defendants contend that the insurance policy is still insufficient to satisfy the damage to the building and this demonstrates that Plaintiffs still have a valid claim against Defendant Giddings.  While the Court recognizes that there could potentially be some liability on the part of Defendant Giddings, the reasons Plaintiffs have provided to dismiss him are not implausible.

The Court finds that Plaintiffs have stated valid reasons for the inclusion of Defendant Giddings in this action and the decision to dismiss him from the action.  Defendants have not met their burden to show that Plaintiffs brought this action against Defendant Giddings to prevent diversity.  For this reason, the Court recommends that Plaintiffs' motion to remand be granted.

**C.　　Attorney Fees**

Plaintiffs argue that Defendants removed this action solely on the basis that no depositions of Giddings employees were deposed which is not an objectively reasonable basis for removal and

1  seek attorney fees.  (ECF No. 6 at 9.)  Defendants counter that the removal of this action was done

2  in good faith and costs should not be awarded.  (ECF No. 9 at 10.)

3      Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require the payment

4  of just costs and any actual expenses, including attorney fees, incurred as a result of removal."

5  Whether to award attorney fees is left to the discretion of the district court.  Martin v. Franklin

6  Capital Corp., 546 U.S. 132, 139 (2005).  Determining whether attorney fees should be awarded

7  turns on the reasonableness of the removal.  Lussier v. Dollar Tree Stores, Inc., 518 F.3d 1062,

8  1165 (9th Cir. 2008).

9      While the Court finds that this action should be remanded to state court, the law is unclear

10 as to the standard to be applied where the defendant is arguing bad faith conduct on behalf of the

11 plaintiff to defeat removal.  In this action, there was limited discovery conducted by plaintiffs

12 against the dismissed defendant.  The defendant was dismissed for a waiver of costs.  Finally, the

13 dismissal of the defendant was approximately fifteen months after the action commenced.  Given

14 the facts presented in support of the removal and the unsettled state of the law governing this

15 matter, the Court finds that Defendants had a reasonable basis for removal and Plaintiff's request

16 for attorney fees should be denied.

17                                              **IV.**

18                              **CONCLUSION AND RECOMMENDATION**

19      Based on the foregoing, IT IS HEREBY RECOMMENDED that Plaintiff's motion to

20 remand be GRANTED and Plaintiffs' request for attorney fees be DENIED.

21      These findings and recommendations are submitted to the district judge assigned to this

22 action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen

23 (14) days of service of this recommendation, any party may file written objections to these

24 findings and recommendations with the Court and serve a copy on all parties.  Such a document

25 should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The

26 district judge will review the magistrate judge's findings and recommendations pursuant to 28

27 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified

28 time may waive the right to appeal the district judge's order.  Martinez v. Ylst, 951 F.2d 1153 (9th

1  Cir. 1991).

2

3

4  IT IS SO ORDERED.

5     Dated:  __**April 28, 2014**__

                                    UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28